## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

CANDACE E. ALSTON )
10012 Cedarhollow Lane )
Largo, MD 20774 )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. CAL13-20833
 ) JURY TRIAL DEMANDED
TRANSUNION, LLC )
Serve: CSC-Lawyers Incorporating Service )
    7 St. Paul Street, Suite 1660 )
    Baltimore, MD 21202 )
 )
    Defendant, )
 )
EXPERIAN INFORMATION )
SOLUTIONS, INC. )
Serve: Corporation Trust Inc. )
    351 W. Camden Street )
    Baltimore, MD 21201 )
 )
    Defendant. )

## COMPLAINT

COMES NOW the Plaintiff, Candace E. Alston, (hereafter the "Plaintiff") and for her complaint against the Defendants Transunion, Llc. ("Transunion") and Experian Information Solutions, Inc. ("Experian") alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (FCRA), and the Miscellaneous Consumer Protection Provisions, Md. Code §14-1201 *et seq.* (MCPP).

### PARTIES

2. The plaintiff is a natural person and resides in the State of Maryland. She is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c) and MCPP, Md. Code §14-1201(c).

1

3. Upon information and belief Defendants are corporations authorized to do business in the State of Maryland.

4. Upon information and belief each Defendants is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f) and a "person" within the meaning of the MCPP, Md. Code §14-1201(j). Upon information and belief, Defendants are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

5. Upon information and belief, Defendants disburse such consumer reports to third parties under contract for monetary compensation.

## FACTS

6. Within 2 years of filing this complaint Ms. Alston obtained her credit report and learned that Defendants were reporting a Wells Fargo mortgage account as delinquent.

7. Ms. Alston disputed the mortgage account with the Defendants on numerous occasions within 2 years of the filing of this complaint.

8. The Defendants failed to perform reasonable investigations of Ms. Alston's numerous disputes.

9. The Defendants provided inaccurate credit reports containing the mortgage account to persons or entities requesting Ms. Alston's credit report.

### *Transunion Reporting*

10. Ms. Alston obtained her Transunion credit report on July 12, 2011. The Defendant was reporting a Wells Fargo mortgage account as 120+ days past due with a past due balance of $4,057 and the date of last payment being 01/2011.

11. The reporting was false because Ms. Alston was not behind on her mortgage.

2

12. Ms. Alston submitted an online dispute to Transunion on July 17, 2011.

13. Rather than performing an investigation Transunion asked Wells Fargo if the disputed account was accurate. Wells Fargo instructed Transunion to continue reporting the account except as past due $4,999.

14. Ms. Alston was frustrated and discouraged by Transunion's decision to continue reporting the mortgage account as past due.

15. Ms. Alston submitted another dispute to Transunion on or about September 22, 2011.

16. Again Transunion outsourced its responsibility to investigate the dispute to Wells Fargo, who instructed Transunion to continue reporting the account as past due. The payment history was now showing that it was past due $7,303 and paid in August 2011.

17. Ms. Alston's frustration exponentially increased at this point, not only because Transunion refused to correct its reporting but also because Ms. Alston was extremely worried that she would not be able to get a car loan due to this account on her credit report.

18. Ms. Alston submitted another dispute to Transunion on or about Nov 21, 2011. In this dispute Ms. Alston provided detailed information and attached documents showing that Monarch Bank was the payee of the note and still requesting payments. Ms. Alston also enclosed a copy of a payment from her to Monarch Bank.

19. Despite all the documents provided by Ms. Alston, Transunion continued to exclusively rely on the bare, unsupported statements of Wells Fargo.

20. Ms. Alston's frustration and emotional distress was reaching acute levels. Prior to lodging her last dispute she was denied on at least two occasions a car loan, which she needed after her car was totaled in August 2011.

21. On June 12, 2012 Ms. Alston submitted yet another dispute to Transunion. This time Ms. Alston included detailed information with many more documents--which included several Monarch Mortgage Statements, a copy of the Note, Mortgage Interest Statement from Monarch, an Amortization Schedule, an Equifax credit report from February 24, 2012 and Equifax credit report from June 30, 2011.

22. Once again Transunion did not consider any of Ms. Alston's documents in its so-called investigation of the dispute. Transunion did nothing more than to ask Wells Fargo to look into the dispute and instruct back to Transunion how the account should be reported. Just as in every previous occasion Wells Fargo instructed Transunion to continue reporting the account as delinquent.

23. Ms. Alston struggled with her credit during the time period related to the disputes in this action. Based upon information and belief Transunion provided inaccurate credit reports to several credit report users, merchants and/or credit lenders.

### *Experian Reporting*

24. Ms. Alston obtained her Experian credit report on July 11, 2011. The Defendant was reporting the mortgage account as 120 days past due with a past due balance of $4,057.

25. The reporting was false because Ms. Alston was not behind on her mortgage.

26. Shortly after obtaining her report Ms. Alston submitted an online dispute to Experian.

27. Without performing an investigation Experian asked Wells Fargo if the disputed account was accurate. Wells Fargo instructed Experian to modify its reporting as 150 days past due.

4

28. Ms. Alston was frustrated and discouraged by Experian's decision to continue reporting the delinquent mortgage account.

29. On August 22, 2011 Ms. Alston submitted a letter to Experian in which she requested a description of the reinvestigation procedure and requested another reinvestigation of the account. Enclosed with her letter were a copy of the promissory note and monthly mortgage statement, both of which indicated that Wells Fargo was neither the owner nor servicer of the mortgage account.

30. Experian did not respond to Ms. Alston's August 22, 2011 correspondence. Experian neither reinvestigated her dispute nor provided her with a description of its reinvestigation of her initial dispute.

31. In November of 2011 Ms. Alston issued another letter to Experian in which she complained about not receiving a description of the reinvestigation procedure. In that letter she enclosed a copy of her August mortgage payment to Monarch Bank with a one-page statement concerning the status of the account. She then went on to explain how Experian's reporting of the account was preventing her from obtaining a car loan that she needed because her car was totaled in an accident. She concluded by repeating her request for a description of the reinvestigation process of the initial dispute.

32. On December 2, 2011 Experian issued a report that stated her dispute was frivolous and that Experian would not reinvestigate the account again.

33. Upon learning Experian was refusing to investigate the account Ms. Alston was flabbergasted.

34. On June 12, 2012 Ms. Alston submitted another dispute to Experian. This time Ms. Alston included detailed information in the dispute and enclosed several documents, which

included several Monarch Mortgage Statements, a copy of the Note, a Mortgage Interest Statement, an Amortization Schedule, an Equifax credit report from February 24, 2012 and Equifax credit report from June 30, 2011. Upon information and belief Experian forwarded the dispute to Wells Fargo.

35. Again Experian relied on Wells Fargo to investigate the account instead of performing its own investigation.

36. Experian modified its reporting to show that the mortgage account was past due $7,303 and that a payment was received in August 2011.

37. Ms. Alston was very upset to find that despite providing a substantial amount of documentation that the reporting was inaccurate, Experian simply relied on Wells Fargo input in its reporting of the account.

38. Ms. Alston struggled with her credit during the time period related to the disputes in this action. Based upon information and belief Experian provided inaccurate credit reports to several credit report users, merchants and/or credit lenders.

## COUNT ONE: VIOLATION OF FCRA

39. Plaintiff realleges and incorporates paragraphs 1 through 38 above as if fully set out herein.

40. Defendants violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

41. Defendants violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate

and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

42. Defendants violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide Wells Fargo with all the relevant information regarding the Plaintiff's dispute.

43. Defendants violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

44. Defendants violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

45. Experian violated 15 U.S.C. §1681i(a)(7) by failing to provide a description of the reinvestigation within 15 days of receiving Plaintiff's requests for such descriptions.

46. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct any investigation, let alone a reasonable investigation of Plaintiff's August 22, 2011 and November 2011 disputes.

47. As a result of Defendants foregoing violations of 15 U.S.C. §§1681e(b) and 1681i(a)(1),(2),(4),(5)(A)&(7), Plaintiff suffered actual damages, including but not limited to: out-of-pocket expenses, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

48. The violations by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Punitive damages are required to change Defendants reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. In the

alternative, Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

49.  Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

CANDACE E. ALSTON

By _____
Candace E. Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*

